**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MEZANUR RAHAMAN, GERALD REED, and FARRAH FORREST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This class action complaint is brought by Plaintiffs Mezanur Rahaman, Gerald Reed, and Farrah Forrest ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class"), against Defendant General Motors LLC ("Defendant"). The allegations set forth below are based on personal knowledge as to Plaintiffs' own acts and on investigation conducted by counsel as to all other allegations.

## PARTIES

1.    Plaintiff Mezanur Rahaman is a citizen and resident of Pennsylvania, residing in Philadelphia, Pennsylvania.

2.    Plaintiff Gerald Reed is a citizen and resident of Pennsylvania, residing in North Huntington, Pennsylvania.

3.    Plaintiff Farrah Forrest is a citizen and resident of New York, residing in Roslyn, New York.

4.    Defendant General Motors LLC is a Delaware limited liability company with its principal place of business in Detroit, Michigan. General Motors Company is the ultimate parent of General Motors LLC. General Motors Company is a Delaware limited liability company with

1

its principal place of business in Detroit, Michigan. General Motors LLC is registered to do business in Pennsylvania.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states.

6.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendant, and (4) there are more than 100 Class members.

7.     This Court has general personal jurisdiction over Defendant pursuant to 42 Pa. Cons. Stat. § 5301(a)(2)(i) because Defendant is registered to do business in Pennsylvania. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023).

8.     This Court further has personal jurisdiction over Defendant because Plaintiffs' claims arise out of Defendant's contacts with this district.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### I.  Class Vehicles

10.     Defendant designs, manufactures, advertises, markets, and sells vehicles, including the 2021-2024 Cadillac Escalade and Escalade ESV, Chevrolet Silverado 1500, Suburban, and Tahoe, and GMC Sierra 1500, Yukon, and Yukon XL vehicles ("Class Vehicles").[1]

11.     Nearly 600,000 Class Vehicles have been sold by Defendant in the United States.[2]

---

[1] https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf
[2] https://www.cbsnews.com/news/gm-recall-escalade-silverado-suburban-sierra-engine-failure-risk/

12.     The Class Vehicles are equipped with a 6.2L V8 gas engine with part number L87.[3]

13.     The L87 Engine is part of GM's Generation V small block engine family, otherwise known as "EcoTec3." The L87 is in the second generation of the EcoTec3 family of engines.[4]

14.     The Class Vehicles are equipped with connecting rods which link the pistons to the crankshaft. The crankshaft is a rotating shaft that converts the reciprocating motion of the pistons into rotational motion, which then drives the engine's output.

15.     Connecting rods and crankshafts are manufactured to very tight tolerances to allow for proper fitting of components, bearing clearance, and smooth operation, preventing premature wear, excessive noise, and potential catastrophic failures.

16.     Engine oil is crucial for the proper functioning and longevity of connecting rods and the crankshaft because it lubricates the bearing surfaces, reduces friction, absorbs heat, and helps prevent metal-to-metal contact.

## II.  Defect

17.     The Class Vehicles suffer from a uniform defect in the connecting rod or crankshaft engine component which can cause severe and unexpected engine damage, failure, and loss of propulsion (the "Defect").[5]

18.     Specifically, the Defect causes "a bearing failure that may result in either engine seizure or breaching of the engine block by the connecting rod."[6]

19.     Defendant's recall notice states: "Drivers may be alerted to an issue with their engine prior to failure either from knocking, banging, or other unusual engine noises or from illumination of the check engine light, or both. Drivers may also experience a no-start condition

---

[3] https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf
[4] https://gmauthority.com/blog/gm/gm-engines/l87/
[5] https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf
[6] https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf

or notice engine hesitation, high RPMs, abnormal shifting or reduced propulsion prior to engine failure. The condition has no impact on braking operation and does not cause an abrupt vehicle stop, allowing the driver to coast down and maneuver safely to the side of the road. If the engine fails during vehicle operation, the vehicle will lose propulsion, increasing the risk of a crash."[7]

20.    The Defect causes extensive damage that is difficult, time-consuming, and expensive to repair.

21.    The Defect can manifest spontaneously, such as when driving at highway speeds, causing the engine to fail and potentially causing a crash or serious injury or death.

22.    The Defect presents a serious safety issue that can cause serious bodily harm.

23.    The Defect creates an unreasonably dangerous condition when operating the Class Vehicles.

### III.  Investigation and Recall of the Class Vehicles

24.    On January 16, 2025, NHTSA announced an investigation of the Class Vehicles due the Defect following numerous reports of failure in the connecting rod bearing.[8]

25.    The investigation notice states: "The complainants report that there is no detectability prior to the failure."[9]

26.    Defendant announced a recall of the Class Vehicles due to the Defect on April 24, 2025.[10]

27.    The recall notice identified the primary root causes: "Engine teardown analysis identified two primary root causes, both of which are attributable to supplier manufacturing and

---

[7] https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf
[8] https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf
[9] https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf
[10] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF

quality issues: (1) rod-bearing damage from sediment on connecting rods and crankshaft-oil galleries; and (2) out of specification crankshaft dimensions and surface finish."[11]

28.     Defendant's recall involves repairing or replacing the damaged engine components—only if necessary following an inspection at the discretion of the dealer—and changing the Class Vehicle's oil to a higher viscosity formula.[12]

29.     Prior to the recall, the Class Vehicles used 0W-20 motor oil, a relatively thin motor oil.[13]

30.     The recall is inadequate and does not provide a complete and lasting remedy for the Defect.

31.     Class Vehicles in which the Defect has not caused damage yet will only be offered a high viscosity oil, which will not remedy the Defect and will only leave the owner driving their defective vehicles with the unreasonably high risk of experiencing a spontaneous and dangerous engine failure.

32.     If a Class Vehicle has suffered extensive damage due to the Defect, it can be extremely time consuming and costly to repair. Further, due to high demand, there are long wait times for the necessary parts.

33.     The recall notice states that the root cause of the Defect has been remedied because: "A series of crankshaft and connecting rod manufacturing improvements implemented on or before June 1, 2024, addressed contamination and quality issues."[14]

**IV.  Inadequacy of Recall**

---

[11] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF
[12] https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf
[13] https://www.aa1car.com/library/engine_failure_gm_62.htm
[14] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF

34.     Defendant's recall program does not provide a complete and lasting remedy to Class members.

35.     Most Class Vehicles will be offered only a high-viscosity oil that Defendant asserts will slow down the progress of the Defect.

36.     Changing the Class Vehicles' oil to a high-viscosity formula will not provide a complete and lasting remedy and will not make the vehicles any safer in the event of a spontaneous failure.

37.     Only a small number of Class Vehicles are eligible to have their engines replaced under the strict guidelines of the recall program.

38.     Only Class Vehicles that have experienced a catastrophic failure will be able to obtain new connecting rods and crankshafts.

39.     But Defendant's repair or replacement of the engine is still insufficient, because Defendant intends to replace the Class Vehicles' connecting rods and crankshafts with identical versions that were manufactured "after the suppliers' suspect manufacturing window."

40.     Defendant has not redesigned or tested these new connecting rods and crankshafts to ensure that they can withstand the operating conditions of the Class Vehicles.

41.     Therefore, even if a Class Vehicle is repaired under the recall program, it continues to be defective and presents an unreasonably dangerous condition.

**V.  Harm to Plaintiffs and Class Members**

42.     All Plaintiffs and Class members unknowingly and unwittingly paid for a Class vehicle equipped with a defective L87 Engine that is highly susceptible to sudden engine failure, subjecting them and their vehicles to the harms and dangers described herein.

43.     The Defect substantially diminishes the value of the Class Vehicles compared to the value that was represented by Defendant.

44.     Class Vehicle owners who experience the Defect routinely have their concerns dismissed by Defendant and their authorized dealers and have their warranty claims denied.

45.     Class Vehicle owners who are denied warranty claims must choose to continue operating an unsafe vehicle, pay for costly out-of-pocket repairs, or simply not use their vehicle.

46.     Defendant has refused to provide an adequate or lasting remedy for the Defect under the express and implied warranties, leaving Plaintiffs and Class members with no effective remedy.

47.     The Defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased a Class Vehicle.

48.     Plaintiffs and Class members reasonably and justifiably relied on Defendant's representations that the Class Vehicles were safe, reliable, and in good repair when making their decision to purchase or lease a Class Vehicle.

49.     The inclusion of properly manufactured connecting rods and crankshafts was material to Plaintiffs and Class members' decision to purchase or lease a Class Vehicle.

50.     Knowledge of the existence of the Defect would have materially affected Plaintiffs and Class members' decisions to purchase or lease a Class Vehicle and the price they would be willing to pay.

51.     The Class Vehicles are therefore worth less than what Defendant represented and the price that Plaintiffs and Class members paid.

52.     Had Plaintiffs and Class members known about the Defect, they would not have purchased or leased a Class Vehicle or would have only paid substantially less for it.

7

53.     Plaintiffs and Class members suffered damages by paying more for the Class Vehicles then they would have paid had they been aware of the Defect which Defendant failed to disclose, or they would not have purchased or leased their Class Vehicle at all.

54.     Defendant has not offered to compensate Plaintiffs and Class member for the diminished value of their vehicles associated with the premium price that they paid for safety and reliability.

## VI.  Defendant Had Superior and Exclusive Knowledge of the Defect

55.     Defendant advertises and markets the Class Vehicles as well-made, durable, powerful, reliable, dependable, safe, and precisely engineered.[15]

56.     Defendant knew about the Defect since at least February 2022 when it closed an investigation into the Defect.[16]

57.     Despite its knowledge of the Defect, Defendant continued selling the Class Vehicles with a known Defect for at least three years before the NHTSA investigation and recall in 2025.

58.     "GM's investigation identified 28,102 field complaints or incidents in the US potentially related to failure of the L87 engine due to crankshaft, connecting rod, or engine bearing failure, of which 14,332 involved allegations of loss of propulsion. These field complaints were received between April 29, 2021, and February 3, 2025."[17]

59.     Defendant knew or should have known about the Defect through their superior and exclusive knowledge of non-public, internal data about the Defect, including: (1) pre-release

---

[15] https://www.chevrolet.com/trucks/silverado/1500?x-modelyear=2025&x-carline=silverado&x-bodystyle=silverado%201500&x-provider-id=560803; https://www.cadillac.com/suvs/escalade; https://www.gmc.com/trucks/sierra/1500
[16] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF
[17] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF

testing data; (2) quality control data; (3) customers' complaints to Defendant about the Defect; (4) customer complaints to authorized dealers about the Defect which are then reported to Defendant; (5) aggregate data from Defendant's dealers, including their repair records and orders; (6) warranty and post-warranty claims; and (7) testing conducted in response to complaints and warranty claims. Such internal data would align with publicly available data evidencing a high rate of vehicle owners experiencing the Defect.

60.     Defendant knew or should have known about the Defect because of public complaints about the Defect, including complaints submitted to NHTSA.

61.     The NHTSA complaints database is the largest publicly accessible database of vehicle complaints and is regarded in the industry as an invaluable resource for identifying potential defects and safety recalls.

62.     Pursuant to NHTSA regulations, Defendant are responsible for any safety defect in any of their vehicles, 49 C.F.R. § 573.5, and are required to report defects to NHTSA. 49 C.F.R. § 573.6.

63.     Defendant therefore is responsible for tracking potential defects submitted to NHTSA and promptly investigating them.

64.     With a wealth of internal and publicly available data, Defendant knew or should have known of the Defect but failed to notify their customers of the nature and extent of the Defect or provide any adequate remedy for the Defect.

65.     Defendant knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased the Class Vehicles.

66.     Despite their knowledge of the Defect in the Class Vehicles, Defendant actively misrepresented, omitted, and concealed the Defect in order to fraudulently induce Plaintiffs and Class members into purchasing or leasing the Class Vehicles and obtain a benefit from them.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### I.  Mezanur Rahaman

67.     Plaintiff Mezanur Rahaman purchased a new 2024 Cadillac Escalade ESV in or around 2024 from Cadillac of Turnersville in Turnersville, New Jersey.

68.     In deciding to purchase the Class Vehicle, Plaintiff relied on Defendant's representations that the Class Vehicles were safe, reliable, and in good repair.

69.     Specifically, Plaintiff was looking for a safe, reliable, high-quality SUV.

70.     Plaintiff timely obtained all recommended oil changes and maintenance under the Class Vehicle's warranty.

71.     In or around April 2025, an indication on Plaintiff's Cadillac mobile app indicated his vehicle is subject to the Recall.

72.     Plaintiff's Class Vehicle now requires costly and time-consuming repairs that will deprive Plaintiff of the use of his vehicle—which he must still pay for—and may not provide a complete and lasting remedy.

73.     Plaintiff must also experience extreme inconvenience and lost time while waiting for their vehicle to be repaired.

74.     Until this Recall, Plaintiff has never been informed of any recalls or defects related to their Class Vehicle's engine.

### II.  Gerald Reed

75.     Plaintiff Gerald Reed purchased a new 2023 Cadillac Escalade Super Cruise in or around September 2023 from C. Harper Cadillac in Belle Vernon, Pennsylvania.

76.     In deciding to purchase the Class Vehicle, Plaintiff relied on Defendant's representations that the Class Vehicles were safe, reliable, and in good repair.

77.     Specifically, Plaintiff was looking for a safe, reliable, high-quality SUV.

78.     Plaintiff timely obtained all recommended oil changes and maintenance under the Class Vehicle's warranty.

79.     In or around April 2025, Plaintiff became aware that his vehicle is subject to the Recall.

80.     Plaintiff's Class Vehicle now requires costly and time-consuming repairs that will deprive Plaintiff of the use of his vehicle—which he must still pay for—and may not provide a complete and lasting remedy.

81.     Plaintiff must also experience extreme inconvenience and lost time while waiting for their vehicle to be repaired.

82.     Until this Recall, Plaintiff has never been informed of any recalls or defects related to their Class Vehicle's engine.

**III.   Farrah Forrest**

83.     Plaintiff Farrah Forest leased a new 2022 Cadillac Escalade Premium Sport T-1 in or around June 2022 from King O'Rourke Cadillac in Smithtown, New York.

84.     In deciding to lease her Class Vehicle, Plaintiff relied on Defendant's representations that the Class Vehicles were safe, reliable, and in good repair.

85.     Specifically, Plaintiff was looking for a safe, reliable, high-quality SUV.

86.     Plaintiff timely obtained all recommended oil changes and maintenance under the Class Vehicle's warranty.

87.     On or about November 1, 2024, Plaintiff pulled their Class Vehicle into their driveway, it made loud noise, and then it would not start at all.

88.     The vehicle had to be towed to North Bay Cadillac in Roslyn, New York.

89.     After a few days, the dealer informed Plaintiff that the vehicle needed a new engine, which would be covered under warranty.

90.     Ordering the necessary part and completing the repair took approximately three weeks.

91.     While the vehicle was being repaired, Plaintiff did not receive a loaner vehicle and instead, had to borrow their sister-in-law's vehicle.

92.     In or around April 2025, Plaintiff became aware that her vehicle is subject to the Recall.

93.     While Plaintiff's Class Vehicle was repaired under warranty, Plaintiff still paid more for their vehicle than they otherwise would have due to Defendant's misrepresentations, omissions, and concealment of material information related to the Defect, and their vehicle is still permanently diminished in value due to the need for extensive repairs.

94.     Until this Recall, Plaintiff has never been informed of any recalls or defects related to their Class Vehicle's engine.

## **CLASS ALLEGATIONS**

95.     This action is brought as a class action under Fed. R. Civ. P. 23.

96.     The Class is defined as follows:

> **Nationwide Class:** All persons who purchased or leased the Class Vehicles in the United States.

**Pennsylvania Subclass:** All persons who purchased or leased the Class Vehicles in Pennsylvania.

**New Jersey Subclass:** All persons who purchased or leased the Class Vehicles in New Jersey.

**New York Subclass:** All persons who purchased or leased the Class Vehicles in New York.

97.     The Class excludes the following: Defendant, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

98.     The Class definition may be modified based upon discovery and further investigation.

99.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class may be ascertained through discovery of records from Defendant and third parties. Defendant has manufactured and sold approximately 600,000 Class Vehicles in the United States.

100.    *Commonality*: There are questions of law or fact common to the Class, including, without limitation:

    a.    Whether Defendant engaged in unlawful conduct as alleged herein;

    b.    Whether the Class Vehicles are defective;

    c.    Whether the Defect presents an unreasonably dangerous condition;

    d.    Whether Defendant knew or should have known about the Defect before marketing and selling the Class Vehicles;

    e.    Whether Defendant misrepresented, concealed, or omitted material information from Plaintiffs and Class members about the Defect;

    f.    Whether Defendant intended that Plaintiffs and Class members rely on their misrepresentations, concealment, or omissions;

    g.    Whether Defendant's conduct constitutes unfair and deceptive trade practices;

h.   Whether Plaintiffs and Class members are entitled to damages or other relief; and

i.   Whether Defendant's conduct was willful and wanton, entitling Plaintiffs and Class members to punitive damages.

101.   *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendant relating to the same course of conduct, and are entitled to relief under the same legal theories.

102.   *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the interests of the Class. Plaintiffs' counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

103.   *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendant and depend on the same determinations of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to

be encountered in the management of this action that would preclude its maintenance as a class action.

104.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

105.     Defendant's unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

106.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
(on behalf of Plaintiffs and the Class)

107.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

108.     Defendant's representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[18]

109.     The Defect caused the Class Vehicles to fail to conform to Defendant's representations that formed part of the basis of the bargain.

---

[18] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

110.    The warranty covers the Defect and any damage proximately caused by the Defect.

111.    Defendant breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

112.    Defendant's breach deprived Plaintiffs and Class members of the benefit of the bargain.

113.    Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

    a.   Defendant knowingly sold a defective product without informing consumers about the Defect;

    b.   The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiffs and members of the Class;

    c.   Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

    d.   A gross disparity in bargaining power existed between

114.    The essential purpose of the warranty failed because Plaintiffs and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiffs and Class members are entitled to a remedy that is not limited by the terms of the warranty.

115.    Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

116.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

**COUNT II**

16

## BREACH OF IMPLIED WARRANTY
### (on behalf of Plaintiffs and the Class)

117.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

118.    The sale of the Class Vehicles created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[19]

119.    The Defect caused the Class Vehicles to be unmerchantable because the Class Vehicles cannot perform their essential functions according to what the average purchaser would reasonably expect.

120.    The warranty covers the Defect and any damage proximately caused by the Defect.

121.    Defendant breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

122.    Defendant's breach deprived Plaintiffs and Class members of the benefit of the bargain.

123.    Defendant's attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

        a.    Defendant knowingly sold a defective product without informing consumers about the Defect;

---

[19] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

b.   The time limits contained in Defendant's warranty period are unconscionable and inadequate to protect Plaintiffs and members of the Class;

c.   Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendant; and

d.   A gross disparity in bargaining power existed between

124.   The essential purpose of the warranty failed because Plaintiffs and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiffs and Class members are entitled to a remedy that is not limited by the terms of the warranty.

125.   Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

126.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

<u>**COUNT III**</u>
**FRAUD**
**(on behalf of Plaintiffs and the Class)**

127.   All preceding paragraphs are incorporated by reference as though fully set forth herein.

128.   Defendant represented to Plaintiffs and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

129.   The Defect caused the Class Vehicles to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

18

130.     Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

131.     Defendant mispresented, concealed, and omitted material information concerning the Defect.

132.     The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

133.     Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiffs and Class members.

134.     Defendant had a duty to inform Plaintiffs and Class members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiffs and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing or leasing the Class Vehicles.

135.     Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiffs and Class members to purchase or lease the Class Vehicles at a substantially higher price than what they would otherwise have paid.

136.     Plaintiffs and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing or leasing the Class Vehicles.

137.     Plaintiffs and Class members would not have purchased or leased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

138.     Defendant acted in bad faith and with intent to defraud because:

> a.     Defendant sold the Class Vehicles to Plaintiffs and Class members with gross disregard for Plaintiffs and Class members' rights and wellbeing;

      b.      Defendant sold the Class Vehicles to Plaintiffs and Class members with intent to not provide a remedy for the Defect; and

      c.      Defendant sought to unjustly enrich themselves to the detriment of Plaintiffs and Class members.

139.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

**COUNT IV**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiffs and the Class)**

140.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

141.    Defendant represented to Plaintiffs and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

142.    The Defect caused the Class Vehicles to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

143.    Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

144.    Defendant mispresented, concealed, and omitted material information concerning the Defect.

145.    The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.

146.    Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiffs and Class members to purchase or lease the Class Vehicles at a substantially higher price than what they would otherwise have paid.

147.    Plaintiffs and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing or leasing the Class Vehicles.

148.    Plaintiffs and Class members would not have purchased or leased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

149.    Plaintiffs and Class members conferred substantial benefits on Defendant by purchasing or leasing defective Class Vehicles at a premium without receiving a product that conformed to Defendant's representations.

150.    Defendant knowingly and willingly accepted and enjoyed these benefits.

151.    Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiffs and Class members when Plaintiffs and Class members did not obtain their promised benefits.

152.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members are entitled to restitution.

### COUNT V
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 P.S. § 201-1, *et seq.*
### (on behalf of Plaintiff Reed and the Pennsylvania Subclass)

153.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

154.    Defendant represented to Plaintiff Reed and Pennsylvania Subclass members that the Class Vehicles were reliable, merchantable, and in good repair.

155. The Defect caused the Class Vehicles to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

156. Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

157. Defendant mispresented, concealed, and omitted material information concerning the Defect.

158. The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.

159. Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff Reed and Pennsylvania Subclass members.

160. Defendant had a duty to inform Plaintiff Reed and Pennsylvania Subclass members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff Reed and Pennsylvania Subclass members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing or leasing the Class Vehicles.

161. Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff Reed and Pennsylvania Subclass members to purchase or lease the Class Vehicles at a substantially higher price than what they would otherwise have paid.

162. Plaintiff Reed and Pennsylvania Subclass members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing or leasing the Class Vehicles.

163.     Plaintiff Reed and Pennsylvania Subclass members would not have purchased or leased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

164.     Defendant acted in bad faith and with intent to defraud because:

   a.     Defendant sold the Class Vehicles to Plaintiff Reed and Pennsylvania Subclass members with gross disregard for Plaintiff Reed and Pennsylvania Subclass members' rights and wellbeing;

   b.     Defendant sold the Class Vehicles to Plaintiff Reed and Pennsylvania Subclass members with intent to not provide a remedy for the Defect; and

   c.     Defendant sought to unjustly enrich themselves to the detriment of Plaintiff Reed and Pennsylvania Subclass members.

165.     Defendant's conduct constitutes deceptive and unfair trade practices within the meaning of 73 P.S. § 201-1, *et seq.*

166.     As a direct and proximate result of Defendant's conduct, Plaintiff Reed and Pennsylvania Subclass members have been injured and sustained damages.

<u>**COUNT VI**</u>
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. 56:8-1, *et seq.***
**(on behalf of Plaintiff Rahaman and the New Jersey Subclass)**

167.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

168.     Defendant represented to Plaintiff Rahaman and New Jersey Subclass members that the Class Vehicles were reliable, merchantable, and in good repair.

169.     The Defect caused the Class Vehicles to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

23

170. Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

171. Defendant mispresented, concealed, and omitted material information concerning the Defect.

172. The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.

173. Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff Rahaman and New Jersey Subclass members.

174. Defendant had a duty to inform Plaintiff Rahaman and New Jersey Subclass members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff Rahaman and New Jersey Subclass members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing or leasing the Class Vehicles.

175. Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff Rahaman and New Jersey Subclass members to purchase or lease the Class Vehicles at a substantially higher price than what they would otherwise have paid.

176. Plaintiff Rahaman and New Jersey Subclass members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing or leasing the Class Vehicles.

177. Plaintiff Rahaman and New Jersey Subclass members would not have purchased or leased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

178.     Defendant acted in bad faith and with intent to defraud because:

    a.      Defendant sold the Class Vehicles to Plaintiff Rahaman and New Jersey Subclass members with gross disregard for Plaintiff Rahaman and New Jersey Subclass members' rights and wellbeing;

    b.      Defendant sold the Class Vehicles to Plaintiff Rahaman and New Jersey Subclass members with intent to not provide a remedy for the Defect; and

    c.      Defendant sought to unjustly enrich themselves to the detriment of Plaintiff Rahaman and New Jersey Subclass members.

179.     Defendant's conduct constitutes deceptive and unfair trade practices within the meaning of N.J.S.A. 56:8-1, *et seq.*

180.     As a direct and proximate result of Defendant's conduct, Plaintiff Rahaman and New Jersey Subclass members have been injured and sustained damages.

<u>**COUNT VI**</u>
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §§ 349-350**
**(on behalf of Plaintiff Forrest and the New York Subclass)**

181.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

182.     Defendant represented to Plaintiff Forrest and New York Subclass members that the Class Vehicles were reliable, merchantable, and in good repair.

183.     The Defect caused the Class Vehicles to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

184.     Defendant knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

185.     Defendant mispresented, concealed, and omitted material information concerning the Defect.

186. The Defect and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.

187. Defendant knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiff Forrest and New York Subclass members.

188. Defendant had a duty to inform Plaintiff Forrest and New York Subclass members of the Defect because Defendant had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiff Forrest and New York Subclass members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing or leasing the Class Vehicles.

189. Defendant mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiff Forrest and New York Subclass members to purchase or lease the Class Vehicles at a substantially higher price than what they would otherwise have paid.

190. Plaintiff Forrest and New York Subclass members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing or leasing the Class Vehicles.

191. Plaintiff Forrest and New York Subclass members would not have purchased or leased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

192. Defendant acted in bad faith and with intent to defraud because:

    a. Defendant sold the Class Vehicles to Plaintiff Forrest and New York Subclass members with gross disregard for Plaintiff Forrest and New York Subclass members' rights and wellbeing;

    b. Defendant sold the Class Vehicles to Plaintiff Forrest and New York Subclass members with intent to not provide a remedy for the Defect; and

  c.  Defendant sought to unjustly enrich themselves to the detriment of Plaintiff Forrest and New York Subclass members.

193. Defendant's conduct constitutes deceptive and unfair trade practices within the meaning of New York General Business Law §§ 349 and 350.

194. As a direct and proximate result of Defendant's conduct, Plaintiff Forrest and New York Subclass members have been injured and sustained damages

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

  a.  An order certifying this action as a class action.

  b.  An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

  c.  An order enjoining Defendant's unlawful conduct.

  d.  An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

  e.  An award of interest as provided by law, including pre-judgment and post-judgment interest.

  f.  Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Trial by jury is demanded.

Dated: June 13, 2025       Respectfully submitted,

                */s/ Charles E. Schaffer*

                Charles E. Schaffer
                Nicholas J. Elia
                **LEVIN SEDRAN & BERMAN LLP**
                510 Walnut Street, Suite 500

Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

Jeffrey Brown *
Brett Cohen *
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 268-3579
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

*Counsel for Plaintiffs and the Proposed Class*

*\* Pro hac vice forthcoming*